# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| d/b/a U.S. BANK EQUIPMENT FINANCE, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | Civil Action No. 1:20-cv-1575 (LO/TCB) |
|  | ) | |
| 3D FACILITY SERVICES, INC., *et al.*, | ) | |
|  | ) | |
| Defendants. | ) | |
|  | ) | |

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiff U.S. Bank National Association d/b/a

U.S. Bank Equipment Finance's ("Plaintiff") Motion for Default Judgment against Defendant

Dennick Skeels ("Mr. Skeels") (Dkt. 18) and Motion for Default Judgment and Order of Detinue

against Defendant 3D Facility Services, Inc. d/b/a Carrington Paving d/b/a Lallande Asphalt

Paving ("3D Facility Services") (Dkt. 28).[1] For the reasons articulated below, the undersigned

U.S. Magistrate Judge recommends that the Court grant Plaintiff's motion.

## I. BACKGROUND

### A.    Procedural Posture

Plaintiff filed this lawsuit against Defendants 3D Facility Services and Mr. Skeels on

---

[1] The relevant filings before the undersigned include Plaintiff's Verified Complaint (Dkt. 1) ("Compl."); Plaintiff's Motion for Default Judgment ("Mot. Default J.") (Dkt. 18); Plaintiff's Memorandum of Law in Support of the Motion for Default Judgment ("Mem. Supp.") (Dkt. 19); Plaintiff's Motion for Default Judgment and Order of Detinue ("Mot. Default J. & Order of Detinue") (Dkt. 28); Plaintiff's Memorandum of Law in Support of the Motion for Default Judgment and Order of Detinue (Dkt. 29); and all attachments and exhibits submitted with those filings.

1

December 22, 2020 for breach of contract against 3D Facility Services (Count I), breach of

contract against Mr. Skeels (Count II), detinue against 3D Facility Services (Count III), and

alternatively, replevin against 3D Facility Services (Count IV). (Dkt. 1.) After Defendants failed

to enter an appearance or respond in any fashion, Plaintiff requested the clerk's entry of default

for both 3D Facility Services and Mr. Skeels on March 15, 2021. (Dkts. 13, 14.) The clerk

entered default as to 3D Facility Services and Mr. Skeels on March 29, 2021. (Dkt. 15.) The

Honorable District Judge Liam O'Grady then entered an order directing Plaintiff to file a motion

for default judgment and to notice a hearing. (Dkt. 16.) Plaintiff complied with this Court's order

and filed a motion for default judgment on May 5, 2021.[2] (Dkts. 18, 19.)

Contemporaneous with its motion for default judgment, Plaintiff filed a motion to set

aside the entry of default judgment against 3D Facility Services. (Dkt. 17.) Plaintiff claims it

"realized that Defendant 3D was not properly served and could not proceed with obtaining a

default judgment against Defendant 3D." (Dkt. 17 at 2.) The Court granted Plaintiff's motion,

extended Plaintiff's time to effectuate service, and vacated the entry of default as to 3D Facility

Services on May 6, 2021. (Dkt. 21.) Plaintiff subsequently served 3D Facility Services'

Registered Agent on May 6 and requested entry of default judgment against 3D Facility Services

on June 9, 2021. (Dkts. 25, 26.)

The undersigned held a hearing on Plaintiff's first motion on Friday, May 28, 2021. A

representative for Mr. Skeels failed to appear or otherwise respond at the hearing. On Friday,

October 1, 2021, the undersigned held a hearing on Plaintiff's second motion. A representative

for 3D Facility Services failed to appear or otherwise respond at the hearing. The Court took this

---

[2] N.B. The Court's April 21, 2020 Order directed Plaintiff to notice a hearing for Friday, May 21, 2021. (Dkt. 16.) Due to a scheduling conflict, Plaintiff instead noticed a hearing for the following week, Friday, May 28, 2021. (Dkt. 20.)

matter under advisement for the undersigned to issue this Report and Recommendation.

### B.      Jurisdiction and Venue

Before the Court can render default judgment, it must have subject-matter and personal jurisdiction over the defaulting parties, and venue must be proper.

*First*, the Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). A federal district court has subject-matter jurisdiction when a dispute involves "citizens of different States" and the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). Here, Plaintiff is a bank chartered in Ohio with its principal place of business in Minneapolis, Minnesota. (Compl. ¶ 1.) 3D Facility Services is a Virginia corporation with its principal place of business in Arlington, Virginia. (Compl. ¶ 2.) Mr. Skeels is a Virginia citizen who resides in Arlington, Virginia. (Compl. ¶ 3.) For purposes of diversity jurisdiction, both defendants are citizens of Virginia and Plaintiff is not. Accordingly, there is complete diversity between the parties. Furthermore, the amount in controversy exceeds $75,000.00. The Court therefore has diversity jurisdiction over this matter.

*Second*, the Court has personal jurisdiction over both Defendants. The standards of federal due process and the forum state's long-arm statute must be satisfied for a federal court to have personal jurisdiction over a party. *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). Federal due process permits personal jurisdiction where a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Further, "a defendant should be able to anticipate being brought to

court in the forum, in that the contacts must be directed at the forum state in more than a random, fortuitous, or attenuated way." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). Virginia's long-arm statute, Virginia Code section 8.01-328.1, provides for personal jurisdiction to the extent that federal due process permits. *Id.* With federal due process and Virginia's long-arm statute requiring the same standard, essentially only one inquiry is required. *See id.*

Furthermore, a court may either have specific jurisdiction, which arises when the defendant's contacts with the forum state give rise to the basis of the lawsuit, or general jurisdiction, which arises when the defendant is domiciled in the forum state or if the defendant has affiliations with the state that are so "continuous and systematic" as to render the party "essentially at home." *Fireclean LLC v. Tuohy*, No. 1:16-cv-294-JJC-MSN, 2016 WL 4414845, at *2 (E.D. Va. June 14, 2016) (citation omitted); *see also Tire Eng'g*, 682 F.3d at 301 (citation omitted).

Here, the Court has general personal jurisdiction over Defendants because they are Virginia residents. (Compl. ¶¶ 2-3.) Therefore, Defendants have sufficient "continuous and systematic" affiliations within Virginia to be subject to general jurisdiction. *Cf. Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (corporations subject to general jurisdiction in places where they are "fairly regarded as at home" (quotations omitted)).

*Lastly*, Plaintiff filed this lawsuit in the proper venue. Under 28 U.S.C. § 1391(b), venue is proper in a judicial district (1) "in which any defendant resides, if all defendants are residents of the State in which the district is located; or (2) "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)-(2). Here, venue is proper under the second provision, as both Defendants reside in Arlington, Virginia, which is within this District. (Compl. ¶¶ 2, 3, 5.)

4

## C.    Service of Process

Before the Court can render default judgment, it must be satisfied that the defaulting parties have been properly served.

### 1)  Mr. Skeels was Properly Served.

Federal Rule of Civil Procedure 4(e)(1) allows a plaintiff to serve an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district is located or where service is made." Fed. R. Civ. P. 4(e)(1). Of relevance here, Virginia Code section 8.01-296 authorizes personal service on an individual by "delivering a copy thereof in writing to the party in person." Va. Code Ann. § 8.01-296(1). When personal service cannot be achieved, this section further provides for substituted service "by posting a copy of such process at the front door…provided that…the party causing service or his attorney or agency mails to the party served a copy of such process and thereafter filed in the office of the clerk of the court a certificate of such mailing." Va. Code Ann. § 8.01-296(2).

Here, Plaintiff's private process server attempted personal on service on Mr. Skeels at his residence four times. (*See* Dkt. 10.) On January 7, 2021, Plaintiff caused copies of the summons and Verified Complaint to be posted at the front door of Mr. Skeels' house. (Mem. Supp. ¶ 9.) Additionally, Plaintiff's private process server filed an affidavit stating that he mailed the summons and Verified Complaint to Mr. Skeels. (Dkt. 11.) Accordingly, the undersigned is satisfied that Plaintiff properly served Mr. Skeels.

### 2)  3D Facility Services was Properly Served.

Federal Rule of Civil Procedure 4(e)(1) allows a plaintiff to serve an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district is located or where service is made." Fed. R. Civ. P. 4(e)(1).

5

Virginia code section 8.01-299 authorizes service on a Virginia corporation or limited liability company by "personal service on any officer, director, or registered agent of such corporation or on the registered agent of such limited liability company." Va. Code Ann. § 8.01-299(1).

Here, Plaintiff's private process server personally served 3D Facility Services' Registered Agent, Jessica Waddell, with the Summons and Complaint for this case. (*See* dkts. 23, 25.) 3D Facility Services is a corporation organized under the laws of the Commonwealth. Accordingly, the undersigned finds that Plaintiff properly served 3D Facility Services.

## II. FINDINGS OF FACT

Upon a full review of the pleadings and record in this case, the undersigned finds that Plaintiff has established the following facts.

### A.    The Agreement and its Assignment to Plaintiff.

Defendant 3D Facility Services arranged through third party Crest Capital to finance the purchase of used equipment and vehicles from Lallande Asphalt Paving Company, Inc. ("Lallande"). (Compl. ¶ 6.) Lallande executed a Bill of Sale and Acknowledgement to Pass Title ("Bill of Sale") addressed to Crest Capital on May 29, 2018.[3] (*Id.*, Ex. 1.) The Bill of Sale provided that upon Lallande's receipt of $150,000.00, it transferred its right, title, and interest in the purchased equipment to 3D Facility Services, free and clear of all liens and encumbrances. (*Id.*) Additionally, the Bill of Sale listed Plaintiff as the lienholder.

The next day, on May 30, 2018, Mr. Skeels, as president of 3D Facility Services, entered into the Equipment Finance Agreement (the "Agreement") with Crest Capital.[4] (Compl. ¶ 7, Ex.

---

[3] Plaintiff attached a true and correct copy of the Bill of Sale and Acknowledgment to Pass Title as Exhibit 1 to its Verified Complaint. (*See* Dkt. 1-2.)

[4] Plaintiff attached a true and correct copy of the Equipment Finance Agreement as Exhibit 2 to

2.) Under this agreement, 3D Facility Services gave Crest Capital a first priority security interest in the purchased equipment. (*Id.*) Additionally, Mr. Skeels signed a personal guaranty, which provided:

> As additional inducement for us to enter into the Contract (including each Supplement), the undersigned ("Guarantor"), jointly and severally, unconditionally personally guarantees that the customer will make all payments and meet all obligations required under this Contract and any Supplements fully and promptly. Guarantor agrees that we may make other arrangements including compromise or settlement with [3D Facility Services], the Guarantor waives all defenses and notices of those changes and will remain responsible for the payment obligations of this Contract. This Guaranty may be enforced against Guarantor even if the Contract is unenforceable against the Customer. We do not have to notify Guarantor if the Customer is in default. If the Customer defaults, Guarantor will immediately pay in accordance with the default provision of the Contract all sums due under the terms of the Contract and will perform all the obligations of the customer under the Contract. If it is necessary for us to proceed legally to enforce this guaranty, Guarantor expressly consents to the jurisdiction of the Court set out in paragraph 13 and agree to pay all costs, including attorney's fees incurred in enforcement of this guaranty. It is not necessary for us to proceed first against the Customer before enforcing this guaranty.

(Compl. ¶ 8, Ex. 2.)

Crest Capital assigned all of its right, title, and interest in the Agreement and the covered equipment to Plaintiff on June 7, 2018.[5] (Compl. ¶ 9, Ex. 3.) Plaintiff paid Lallande $150,000.00 for the purchased equipment that same day.[6] (Compl. ¶ 10, Ex. 4.) Thereafter, the Agreement required 3D Facility Services to make sixty (60) monthly payments of $3,070.50 to Plaintiff. (Compl. ¶ 11, Ex. 2.)

Plaintiff filed notice of its security interest in the below equipment with the Maryland Department of Transportation:

---

its Verified Complaint. (*See* Dkt. 1-3.)

[5] Plaintiff attached a true and correct copy of the Assignment as Exhibit 3 to its Verified Complaint. (*See* Dkt 1-4.)

[6] Plaintiff attached a true and correct copy of the invoice as Exhibit 4 to its Verified Complaint. (*See* Dkt. 5.)

1. one (1) 1998 GMC C7500 Dump Truck (VIN 1GDM7H1C8WJ515167);

2. one (1) 2002 Isuzu NPR Flatbed Truck (VIN JALC4B14627011902);

3. one (1) 1998 Dodge Ram 2500 Truck (VIN 3B7KF26D0WM223500);

4. one (1) 2004 GMC C7500 Dump Truck (VIN 1GDM7C1C14F523002);

5. one (1) 2005 GMC C7500 Steel Drum Dump Truck (VIN 1GDM7C1C95F522908); and

6. one (1) 2004 Carry On Trailer (VIN 4YMUL12194V007197).[7]

(Compl. ¶ 13, Exs. 2, 5.) Similarly, Plaintiff filed a UCC-1 Financing Statement with the Virginia Secretary of State recording its security interest in the remaining purchased equipment:

1. one (1) 1985 Blademor Grader 578-707-D 0125-A-193;

2. one (1) Champion Roller X100602X;

3. one (1) Ingersoll Rand 190D P185WJD Air Compressor 268912UTH327;

4. one (1) Bobcat Skid Steer 863 51447044;

5. one (1) Bobcat Skid Steer 863 5144500330;

6. one (1) StreetPrint SR60 Infrared Heater;

7. one (1) Leeboy 8500LD Paver 1041203008783;

8. one (1) Bobcat Sweeper 72 783714859;

9. one (1) Dynapac LG300 Compactor;

10. one (1) Carry On Trailer 4YMUL12194Y007197; and

11. together with all replacements, parts, repairs, additions, accessions and accessories incorporated therein or affixed or attached thereto and any and all proceeds of the foregoing, including, without limitation, insurance recoveries.[8]

---

[7] Plaintiff attached as Exhibit 5 to its Verified Complaint true and correct copies of the Maryland Notice of Security Interest Filing for each vehicle. (*See* Dkt. 1-7.)
[8] Plaintiff attached as Exhibit 6 to its Verified Complaint a true and correct copy of the UCC

(Compl. ¶ 14, Exs. 2, 6.) Mr. Skeels, as president of 3D Facility Services, signed an Acceptance of Delivery as a part of the Agreement, in which he agreed that "delivery and installation has been fully completed and satisfactory." (Compl. ¶ 12, Ex. 2 at 1.)

### B.     Defendants' Breach of the Agreement.

According to the Agreement, 3D Facility Services is in default if they "do not pay any payment or other sum due to [Plaintiff]." (Compl. Ex. 2 ¶ 10.) In the event of default, 3D Facility Services must (1) "pay the unpaid balance of this Contract, including accrued but unpaid future payments discounted to present value at four percent per annum"; (2)  return the equipment at a location designated by Plaintiff; (3) pay interest at a rate of 8% per annum; (4) pay "all [Plaintiff's] recovery costs after a default[.]" (Compl. ¶ 19, Ex. 2 ¶ 10.) In the event of late payments, the Agreement required Defendants to "pay a late charge of 15%" of any late payment. (*Id.*)

3D Facility Services made fifteen (15) out of the required sixty (60) monthly payments under the Agreement. (Compl. ¶ 15.) 3D Facility Services stopped making payments as of its payment due on September 17, 2019. (*Id.*) Moreover, Mr. Skeels has also failed to make payments under the Guaranty. (Compl. ¶ 16.) Accordingly, Plaintiff alleges that Defendants are in default of the Agreement. (Compl. ¶¶ 17, 18.) Plaintiff also claims it has demanded payment of $132,020.15 from 3D Facility Services but it refuses to pay or return the equipment. (Compl. ¶¶ 20-24.)

---

Financing Statement. (*See* Dkt. 1-7.)

III. Evaluation of the Plaintiff's Complaint

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the

plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736

(E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)).

However, the defaulting party is not deemed to admit conclusions of law or "allegations

regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d

531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). As a result, before

entering default judgment, the Court must evaluate the plaintiff's complaint against the standards

of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim

upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d

610, 612 n.3 (E.D. Va. 2003).

A federal court must apply the laws of the forum state, including choice-of-law rules,

when exercising diversity jurisdiction. *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir.

2013). The parties' Agreement contains a choice-of-law provision, which governs under

Virginia law. *Paul Business Systems, Inc. v. Canon U.S.A,, Inc*, 240 Va. 337, 397, 397 S.E.2d

804 (1990). Here, the parties' contract states: "This Contract will be deemed fully executed and

performed in the state of the Secured Party's or its Assignee's principal place of business…and

shall be governed by and construed in accordance with the laws thereof." (Compl., Ex. 2 ¶ 13.)

Plaintiff's principal place of business is in Minnesota. Therefore, the laws of Minnesota govern

the Agreement in adherence to traditional conflict-of-law rules.

Here, Plaintiff brought claims of breach of contract against 3D Facility (Count I), breach

of the Guaranty against Mr. Skeels (Count II). The undersigned will address each count in turn.

10

### A.  Breach of Contract Against 3D Facility Services under the Agreement.

Under Minnesota law, "[t]he elements of a breach of contract claim are (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper and Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quoting *Park v. Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011)) (internal citations omitted).

*First*, Plaintiff must establish that it formed a contract with 3D Facility Services. Here, the Complaint alleges that 3D Facility Services entered into the Agreement with Crest Capital to finance the equipment. (Compl. ¶ 7, Ex. 2.) Crest Capital later assigned all its interest in the Agreement and the Guaranty to U.S. Bank on June 7, 2018. (Compl. ¶ 9, Ex. 3.) Mr. Skeels signed the Agreement as president of 3D Facility Services. (*Id.*) Plaintiff performed under the Agreement, as did 3D Facility Services for fifteen (15) months. (Compl. ¶ 15.) Mr. Skeels appears to be a competent businessman who understood the straightforward Agreement terms, it is enforceable under Minnesota law. *Midway Nat'l Bank v. Gustafson*, 165 N.W.2d 218, 222 (Minn. 1968). Accordingly, the undersigned determines that 3D Facility Services formed a contract with Plaintiff under the Agreement.

*Second*, Plaintiff must demonstrate that it performed any conditions precedent to its right to demand performance by 3D Facility Services. "A condition precedent . . . is to be performed before the agreement of the parties becomes operative." *Nat'l Union Fire Ins. v. Schwing Am., Inc.*, 446 N.W.2d 410,412 (Minn. Ct. App. 1989) (quoting *Lake Co. v. Molan*, 269 Minn. 490, 498-99, 131 N.W.2d 734, 740 (1964) (citations omitted)). The Agreement in this case did not include any conditions precedent that would excuse 3D Facility Services' failure to perform. Plaintiff fully performed under the Agreement by financing the equipment, and 3D

Facility Services also performed for fifteen (15) months. The undersigned accordingly finds no unmet conditions precedent preventing Plaintiff from exercising their right.

*Finally*, Plaintiff must allege that Defendant breached the Agreement. Plaintiff's predecessor in interest paid Lallande $150,000.00 for the equipment. (Compl. ¶¶ 9-11, Ex. 2.) In return, the Agreement required 3D Facility Services to make sixty (60) monthly payments of $3,070.50 to Plaintiff. (*Id.*) Further, the Agreement states that 3D Facility Services is in breach if they "do not pay any payment or other sum due to [Plaintiff]." (Compl. Ex. 2 ¶ 10.) Plaintiff alleges that starting on September 7, 2019, 3D Facility Services ceased making their monthly payments to Plaintiff, and Mr. Skeels failed to make payments as Guarantor. (Compl. ¶¶ 15-17, Ex. 2.) The undersigned accordingly finds that 3D Facility Services' default on the monthly payments constitutes breach of the Agreement.

Overall, Plaintiff has adequately plead a breach of contract claim against 3D Facility Services upon which relief can be granted under Minnesota law.

B.  **Breach of Contract Against Mr. Skeels under the Guaranty.**

Under Minnesota law, "[w]hen two competent parties who can readily read and write, sign a guaranty agreement and the plaintiff on the basis of the guaranty extends credit to the other defendant, there is nothing left for a Court to do but to find a judgment against guarantors." *Midway Nat'l Bank*, 165 N.W. 2d at 222.

*First*, Plaintiff must establish that it formed a contract with Mr. Skeels. Here, the Complaint alleges that Mr. Skeels signed the Guaranty in his individual capacity. (Compl., Ex. 2.) Plaintiff and 3D Facility Services performed under the agreement for fifteen (15) months. (Compl. ¶ 15.) And, given that Mr. Skeels appears to be a competent businessman who understood the straightforward terms of the Guaranty, the Guaranty is enforceable under

12

Minnesota law. *See Midway Nat'l Bank*, 165 N.W. 2d at 222. Accordingly, the undersigned finds that Mr. Skeels formed a contract with Plaintiff under the Guaranty.

*Second*, Plaintiff must demonstrate that it performed any conditions precedent to its right to demand performance by Mr. Skeels. The Guaranty provided that:

> We do not have to notify Guarantor if the Customer is in default. If the Customer defaults, Guarantor will immediately pay in accordance with the default provision of the Contract all sums due under the terms of the Contract and will perform all the obligations of the customer under the Contract[.]

(Compl., Ex. 2.) Plaintiff therefore did not have to notify Mr. Skeels of his company's default prior to demanding payment from him, nor does there appear to be any other conditions precedent to Plaintiff's exercising their rights. Further, Plaintiff fully performed under the Agreement by financing 3D Facility Services' equipment. As such, the undersigned finds that Plaintiff has the right to demand performance from Mr. Skeels.

*Finally*, Plaintiff demonstrates that Mr. Skeels has breached the Agreement. Plaintiff's predecessor in interest paid Lallande $150,000.00 for the equipment. (Compl. ¶¶ 9-11, Ex. 2.) In return, the Agreement required 3D Facility Services to make sixty (60) monthly payments of $3,070.50 to Plaintiff. (*Id.*) Further, the Agreement states that 3D Facility Services is in breach if they "do not pay any payment or other sum due to [Plaintiff]." (Compl. Ex. 2 ¶ 10.) And, Mr. Skeels "jointly and severally, unconditionally personally guarantee[d] that the customer will make all payments and meet all obligations required" when he signed the Guaranty. (Compl., Ex. 2). Mr. Skeels has not paid the debt and is therefore in breach of the Guaranty.

In sum, Plaintiff has adequately plead a breach of contract claim against Mr. Skeels upon which relief can be granted under Minnesota law.

## IV. REQUESTED RELIEF

Plaintiff has made two separate requests that the Court enter default judgment against Mr. Skeels and 3D Facility Services. Plaintiff requests judgment against Mr. Skeels and 3D Facility Services for $132,020.15 for 3D Facility Services unpaid balance, late charges, and returned service charges and $16,147.98 in prejudgment interest as of July 16, 2021. Plaintiff seeks an order of detinue against 3D Facility Services under Virginia Code section 8.01-114 (Count III). Plaintiff also asks for $14,428.28 in attorneys' fees and costs. The undersigned will address each form of relief in turn.

### A. Monetary Damages Against Mr. Skeels and 3D Facility Services.

First, Plaintiff seeks a total of $148,168.13 in damages.[9] (Werkman Decl. ¶ 25.) This amount consists of: (1) $130,157.83 in unpaid balance; (2) $16,147.98 in prejudgment interest on the unpaid balance at a rate of 8% per annum from December 17, 2019 to July 16, 2021; (3) $1,842.32 in late charges; and (4) $20.00 for one returned payment service charge. (*Id.*)

The Agreement provided for Defendants to pay "the sum of all past due payment, all future payments discounted to present value at (4%) per annum, plus late fees, prejudgment interest at the rate of 8% per annum, attorneys' fees, and costs" in the event of default. (Werkman Decl. ¶ 19, Ex. 2 ¶ 10.) For the late fees, the Agreement required Defendants to "pay a late charge of 15%" of any late payment. (Werkman Decl., Ex. 2 ¶ 10.)

3D Facility Services owed a total of $12,282.00 for four past due payments and a total of $117,875.83 for 41 future payments discounted at a rate of 4% per annum. (Werkman Decl. ¶ 25.) Additionally, Plaintiff is entitled to interest on this balance at a rate of 8% per annum from

---

[9] Plaintiff attached to its supporting memorandum the Declaration of Glenda Werkman in Support of Damages ("Werkman Decl."). (*See* Dkt. 29-2.) Ms. Werkman is a senior loss mitigation specialist at U.S. Bank National Association.

December 27, 2019 to July 16, 2021. This amounts to $16,147.98 in prejudgment interest as of July 16, 2021. (*Id.*) Additionally, Plaintiff is entitled to $1,842.32 in late charges and $20.00 to compensate it for a returned payment service charge. (*Id.*)

Accordingly, the undersigned finds that Plaintiff is entitled to $130,020.15 for damages under the Agreement plus $16,147.98 in prejudgment interest and $1,862.32 in charges for a total of $148,168.13.

### B.   Detinue against 3D Facility Services.

Plaintiff seeks an order directing 3D Facility Services to return the equipment within ten (10) days of this Report and Recommendation. Minnesota law controls substantive matters in this contract dispute; however, "the law of Virginia must control all questions of procedure, burden of proof and sufficiency of evidence." *Vicars v. Atl. Disc. Co.*, 295 Va. 934, 938, 140 S.E.2d 667, 670 (Va. 1965) (applying Virginia law to an action in detinue where Georgia law controlled the case's substantive questions). Therefore, finding that Virginia law applies, the undersigned will evaluate whether the Plaintiff sufficiently alleged claim for detinue under Virginia Code section 8.01-114. Va. Code. Ann. § 8.01-114.

Virginia law permits a plaintiff to recover personal property unlawfully withheld through an action of detinue. Va. Code. Ann. § 8.01-114(A). To recover in detinue, the plaintiff must establish (1) a property interest in the items sought to be recovered, (2) an immediate right to possess the property, (3) that the property is capable of being identified, (4) the property has value, and (5) proof that defendant possessed the property at some time prior to the detinue action. *U.S. v. Moffit, Zwerling & Kemler, P.C.*, 875 F. Supp. 1190, 1198 (E.D. Va. 1995), *aff'd in part, rev'd in part*, 83 F.3d 660 (4th Cir. 1996), *rev'd on other grounds*. If successful in detinue, the plaintiff may recover possession of the property and any resulting damages. *Broad*

*St. Auto Sales, Inc. v. Baxter*, 230 Va. 1, 334 S.E.2d 293 (1985).

As to the first element, Plaintiff has established that it has a property interest in the Equipment because it has a security interest. To be valid, a security interest must attach to the collateral. Va. Code Ann. § 8.9A-203(a).[10] "A security interest attaches when it becomes enforceable against the debtor with respect to the collateral." *Id.* To determine enforceability, the court must ask whether (1) the secured party gave value, (2) the debtor has rights in the collateral, and (3) . . . (A) [there is] an authenticated security agreement that describes the collateral. Va. Code Ann. § 8.9A-203.

Here, Plaintiff has sufficiently alleged that it has a valid security interest in the Equipment. Crest Capital, the initial secured party, gave value for the interest when it "finance[d] the purchase price" of the sale of the Equipment from Lallande to Defendant under the Agreement. (Ex. 2 at 11 ¶ 1.) Plaintiff thereafter assumed the "rights, title, and interests" of Crest Capital in the Agreement. (Ex. 2 at 14.) Per the Bill of Sale, Defendant has "right, title, and interest" in the Equipment. (Ex. 2 at 9.) Finally, the Agreement is authenticated by Defendant and includes a description of the collateral, the Equipment. (Ex. 2 at 10-13.) Therefore, the undersigned finds that Plaintiff has an enforceable security interest in the Equipment that Plaintiff seeks to recover.

Plaintiff has alleged sufficient facts to establish the other elements of detinue. Because, as discussed above, Defendant defaulted on its payments under the Agreement, Plaintiff has an immediate right to possess the Equipment as a holder of a first priority security interest. (Decl. of Werkman ¶¶ 27-29.) This Equipment is identifiable because it is adequately described in the

---

[10] Although Plaintiff does not include a discussion of secured transactions, the undersigned believes further discussion of the law is appropriate.

Agreement and the UCC-1 Financing Statement. (Decl. of Werkman ¶ 29, Ex. 1, 5, 6.) The

Equipment is worth approximately $129,050.00. (Decl. of Werkman ¶ 36.) And finally,

Defendant possessed the Equipment prior to this action in Arlington, Virginia. (Decl. of

Werkman ¶ 32.)

Accordingly, the undersigned finds that the Plaintiff has sufficiently alleged an action in

detinue under the laws of the Commonwealth and is entitled to an order to repossess the

Equipment. *See* Va. Code. Ann. § 8.01-114.

### C. Reasonable Costs and Fees

Next, Plaintiff requests that the Court award reasonable attorneys' fees and costs. Parties

may contract away the "American rule" for attorneys' fees and instead "adopt[] provisions

shifting fees to the losing party in disputes involving the contract." *Dewberry & Davis, Inc. v.*

*C3NS, Inc.*, 723 S.E.2d 239, 243 (Va. 2012). Here, the Guaranty contains fee-shifting provision

providing that Mr. Skeels "agree[s] to pay all costs, including attorney's fees incurred in

enforcement of this guaranty[.]" (Mem. Supp. ¶ 2; Compl., Ex. 2.) Additionally, the Agreement

requires 3D Facility Services to pay all "recovery costs after a default, including…reasonable

attorney's fees…costs of suit…and…all other reasonable out-of-pocket costs." (Compl., Ex. 2 ¶

10.) Mr. Skeels assumed 3D Facility Services' obligations under the Guaranty. (Compl., Ex. 2.)

As such, Plaintiff is entitled to reasonable fees and costs.

In the Declaration of D. Alexander Darcy in Support of Attorneys Fees and Costs

("Darcy Decl.") attached to Plaintiff's supporting memorandum, Plaintiff requests that the Court

award a total of $10,137.71. (Darcy Decl. ¶ 9.) This number accounts for $7,488.80 in attorneys'

fees and $2,649.71 in costs. (Darcy Decl. ¶¶ 6, 8.) The attorney's fees cover the $260.00 per

hour rate for associates and partners at Askounis & Darcy, PC. (*Id.* ¶ 5, Ex. 1.) Costs incurred

17

include printing and scanning documents, postage, accessing electronic court filings, and retaining local counsel. (*Id.*, Ex. 2.)

Upon review of the supporting affidavit and the incurred fees and costs, the undersigned finds that the fees and costs are reasonable. Accordingly, the undersigned recommends that the Court award Plaintiff $10,137.71 in fees and costs.

## V. RECOMMENDATION

For the reasons articulated above, the undersigned recommends that the Court enter an order granting Plaintiff's Motion for Default Judgment (Dkt. 18) and and for Default Judgment and Order of Detinue against Defendant 3D Facility Services, Inc. d/b/a Carrington Paving d/b/a Lallande Asphalt Paving (Dkt. 28), thereby entering default judgment in favor of Plaintiff and against Defendants Dennick Steels and 3D Facility Services. Further, the undersigned recommends that the Court award Plaintiff (1) $132,020.00 in damages; (2) $13,465.09 in prejudgment interest as of April 12, 2021; (3) $1,862.32 in charges; and (4) $10,137.71 in attorneys' fees and costs. Finally, the undersigned recommends an order in detinue directing 3D Facility Services to return the Equipment within ten (10) days.

VI. <span>NOTICE</span>

The parties are advised that objections to this Report and Recommendation, pursuant to

28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within

fourteen (14) days of its service. Failure to object to this Report and Recommendation waives

appellate review of any judgment based on it.

/s/

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

October 18, 2021
Alexandria, Virginia